FILED
SUPERIOR COURT
OF GUAM

2020 SEP 10 PM 12: 01

CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM

THOMAS J. FISHER,

           Petitioner,

    v.

RORY J. RESPICIO, GENERAL MANAGER,
PORT AUTHORITY OF GUAM,

           Respondent.

Special Proceeding SP0097-20

**DECISION AND ORDER**

This matter came before the Honorable Anita A. Sukola on August 3, 2020, upon Thomas J. Fisher's ("Petitioner") Verified Petition for a Writ of Mandamus. Petitioner appeared *pro se*. Assistant Attorney General James L. Canto II appeared on behalf of Respondent Rory J. Respicio. After reviewing the record, the parties' arguments, and all applicable legal authorities, the court hereby issues the following Decision and Order **DENYING** Petitioner's request for the Court to impose sanctions on Respondent.

## BACKGROUND

Petitioner is a private attorney. Respondent is the General Manager of the Port Authority of Guam, which is an autonomous instrumentality of the Government of Guam. *See* 12 GCA § 10102. On July 1, 2020, Petitioner e-mailed Respondent to request documents pursuant to Guam's Sunshine Reform Act of 1999 ("Sunshine Act"). Verified Petition (Jul. 15, 2020) Exh. A. Petitioner sought documentation regarding legal services rendered for the benefit of the Port Authority—specifically, "all memoranda, contracts, purchase orders, payment

applications, and payments for legal services," as well as "all procurement records for legal services" for the entire period between January 1, 2020, and July 1, 2020. *Id.* Later that same day, Respondent sent an e-mail to Petitioner confirming that he received Petitioner's request and would respond accordingly. *Id.*

On July 15, 2020, Petitioner filed a Verified Petition for Writ of Mandamus, asserting that Respondent failed to respond and failed to produce the requested documents. *Id.* at 2. Petitioner claims that Respondent has "an absolute duty to respond to requests made to his agency pursuant to the Sunshine Act and . . . an absolute duty to respond to Petitioner's Request." *Id.* Petitioner therefore seeks (1) a writ of mandate ordering Respondent to disclose the document, and (2) sanctions, including, *inter alia*, that Respondent be fined one thousand dollars ($1,000).

The Court held its first hearing in this matter on July 24, 2020. At the hearing, Respondent asserted that his office had indeed e-mailed all requested documents to Petitioner on July 8, 2020, thereby fully complying with the request. Min. Entry (Jul. 24, 2020). Respondent offered to produce a computer screenshot proving that his office sent the e-mail on July 8, 2020. *Id.* Respondent subsequently filed the Declaration of Margaret N. Duenas re Transmission of Documents (Jul. 31, 2020). Per her Declaration, Ms. Duenas asserted that on July 8, 2020, she e-mailed sixty-three pages of documents to the e-mail account from which Petitioner sent his initial Sunshine Act request. *Id.* at 2.

Respondent additionally filed a document entitled Declaration of Service (Jul. 31, 2020). The Declaration of Service avers that an employee of the Office of the Attorney General attempted to e-mail a copy of the Declaration of Margaret N. Duenas to Petitioner but was not successful. *Id.* The employee allegedly received a "bounce back" error message indicating that the e-mail could not be delivered. *Id.* According to the alleged error message, a copy of which was appended to the Declaration of Service, it appears that Petitioner's "mail folder [was] over the allowed quota (size)" and could not receive new messages. *Id.*

The Court held another hearing on August 3, 2020. At this hearing, Petitioner acknowledged that the Office of the Attorney General had personally served him with some

documents. Min. Entry (Aug. 3, 2020). However, Petitioner asserted that the documents served upon him did not comply with the scope of his request. *Id.* In response, Respondent argued that the Sunshine Act does not require Respondent to personally serve the requested documents on Petitioner, but simply to make the requested documents available for his inspection. *Id.* Petitioner admitted that he had not traveled to the Port Authority to inspect the documents, but he nevertheless renewed his request for the Court to impose sanctions on Respondent. At the conclusion of the hearing, the Court took the issue of sanctions under advisement.

## DISCUSSION

The Sunshine Act is the local analogue to the federal Freedom of Information Act (FOIA). *See Macris v. Guam Mem'l Hosp. Auth.*, 2008 Guam 6 ¶ 33 ("[T]he Sunshine Act and FOIA are alike in language, purpose, and subject matter . . . ."). The Sunshine Act creates a right for "any person" to inspect and take a copy of public documents. 5 GCA § 10103(a). If an officer of a government agency fails to comply with a Sunshine Act request, a Verified Petition for Writ of Mandamus in the Superior Court is an appropriate remedy. *Id.* § 10111(b).

Upon the filing of a Verified Petition, the Superior Court shall order the officer to either promptly disclose the requested documents or to show cause why the officer need not do so. *Id.* § 10111(c). If the officer neither discloses the requested documents nor fails to show good cause for the failure to disclose, the Court may impose sanctions, including a one thousand dollar ($1,000) personal fine. *Id.* § 10112(a). Pursuant to Section 10112(a), such a fine is appropriate only where the Court finds "that the public official's decision to refuse disclosure is not justified under this Chapter." *Id.* Hence, the Court's inquiry centers on the question of whether Respondent made a "decision to refuse disclosure."

The Court must first determine the date on which Respondent was required to disclose. When an agency of Guam receives a request pursuant to the Sunshine Act, it must comply with the request within four (4) working days from receipt of request. 5 GCA § 10103(d). The term "working days" is not defined within the Sunshine Act and has not been clarified by the Guam Supreme Court. The Court therefore looks to interpretations of FOIA for guidance. For a FOIA request, legal holidays and weekend days do not constitute "working days" within the

meaning of the statute. *See, e.g., Judicial Watch, Inc. v. U.S. Dept. of Energy*, 191 F.Supp.2d 138, 139 (D.D.C. Mar. 5, 2002). Here, the Court takes judicial notice of the fact that July 4th and 5th fell on a weekend, and that July 3rd was a GovGuam holiday for the observation of Independence Day. The Court thus calculates that four (4) working days after July 1, 2020, would be July 8, 2020—precisely the date on which Respondent claims he e-mailed the requested documents to Petitioner. If Respondent did indeed fully comply by July 8, 2020, his disclosure would therefore be timely pursuant to Section 10103(d).

Based on the arguments advanced by the parties, in order to determine whether or not Respondent actually complied by that deadline, the Court must make two related determinations: one factual and one legal. The factual question presented is whether a preponderance of evidence shows that the documents were not made available by July 8, 2020. The related legal question presented is whether Respondent's compliance necessarily required e-mailing the requested documents to Petitioner. The Court addresses each in turn.

With respect to the evidentiary question, Petitioner bears the burden of showing that it is more likely than not that Respondent failed to make the documents available. Petitioner's evidence is his sworn allegation that he did not receive the documents on or before July 8, 2020. Respondent's counter-evidence is his own sworn allegation that he e-mailed the documents on July 8, 2020, as well as the sworn Declaration of Margaret N. Duenas (Jul. 31, 2020) which appears to corroborate Respondent's claim. There is no evidence in the record, and no other reason to believe, that any of Petitioner, Respondent, and Ms. Duenas have spoken untruthfully. Indeed, it appears plausible that the collective allegations can coexist. Viewing all allegations in light of the Declaration of Service (Jul. 31, 2020), suggesting that Petitioner's e-mail account may be full or otherwise faulty, the Court recognizes a possibility that the culprit for Petitioner's lack of receipt may be technology rather than human willfulness. The Court therefore concludes that there is not a preponderance of evidence in favor of a finding that Respondent decided not to make the requested documents available to Petitioner.

The related legal question is whether the text of the Sunshine Act imposes a specific legal duty for Respondent to e-mail the documents to Petitioner. When examining questions of

statutory interpretation, "the plain language of a statute must be the starting point." *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 ¶ 14. The Court begins its analysis with 5 GCA § 10104, which provides that an agency "shall provide the [requested] record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." The meaning of this statute is clear: if the requesting person requests that documents be delivered in a particular form or format, and if the documents are "readily reproducible" in that format, then the agency must deliver the requested documents in that format. Presumably, an agency would have to comply with a specific demand for the documents to be delivered by e-mail. Here, however, Petitioner's request does not make such a specific demand; his request merely states "Pursuant to the Sunshine Reform Act, Please provide the following . . . ." Verified Petition (Jul. 1, 2020) Exh. A. Nothing in the request letter, or the e-mail carrying the request letter, specifies that the documents had to be delivered by e-mail or in any other form. Accordingly, the Court holds that Section 10104 is inapplicable to the instant Verified Petition.

With the specific right created by 5 GCA § 10104 inapplicable, the Court turns to the general right created by 5 GCA § 10103. The Court notes that Section 10103, which provides the general structure for Sunshine Act requests, is entitled "Right of *Inspection* of Public Documents." 5 GCA § 10103 (emphasis added). The body of the statute provides that every person "has *the right to inspect and take a copy* of any public document on Guam." *Id.* § 10103(a) (emphasis added). It further provides that "public records are *open to inspection at all times during the office hours* of the agency." *Id.* § 10103(b) (emphasis added). The meaning of this statute is clear: members of the public have a right to travel to an agency, to view documents there, and to make their own copies of the documents. Nothing in this statute—nor anywhere else in the Act, excepting the inapplicable Section 10104—requires an agency to deliver documents to a requesting person. Instead, the plain meaning of the above-cited portions of Section 10103 is that a requesting person has the right to travel to an agency, to request to see documents, and to make his or her own copies of those documents. That is the full extent of the relevant right created by Section 10103.

Here, Petitioner has admitted on the record that he did not travel to the Port Authority offices, did not request to view documents there, and did not pay to make copies of the documents he seeks. These decisions appear to have been made of Petitioner's own volition; nothing in the record suggests that Respondent inhibited or prevented Petitioner from doing any of these things. Because Petitioner never traveled to the Port Authority offices, the record contains no evidence as to whether the requested documents were available for Petitioner to view and/or copy there on July 8, 2020. With no evidence to weigh, the Court by definition cannot determine what a preponderance of the evidence would show.

As the Court has explained, the evidence does not preponderate in favor of the proposition that Respondent did not send the documents by e-mail on July 8, 2020. Likewise, the evidence does not preponderate in favor of the proposition that Respondent did not make the documents available for Petitioner's viewing at the Port Authority office on July 8, 2020. Therefore, upon consideration of the whole record, the Court cannot find that Respondent "decided to refuse disclosure" to Petitioner. Accordingly, it would not be appropriate to impose a one thousand dollar ($1,000) fine, or any other sanction, on Respondent at this time.

To be clear, the Court's decision today is not intended to relieve Respondent of his statutory duties under the Sunshine Act. The Court's decision not to impose sanctions does not mean that Respondent no longer needs to make the requested documents available to Petitioner. The Court encourages the parties to communicate with one another in order to resolve outstanding disputes, if any still remain, as to Petitioner's Sunshine Act requests.

## CONCLUSION

For the foregoing reasons, Petitioner's request to impose sanctions on Respondent is **DENIED.** The Court orders no sanctions on Respondent at this time.

**SO ORDERED** this ___10___ day of September, 2020.

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam